**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AUXO BRANDS, INC., an Illinois Corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| R-CLASS US LLC, a Virginia Limited Liability ) | **JURY DEMAND** |
| Company, LIESL DANCEWEAR, LLC, a Virginia ) | |
| Limited Liability Company, LIESL DANCEWEAR ) | |
| INCORPORATED, a Virginia Corporation, and ) | |
| R-CLASS LTD., a Russian corporation, ) | |
| ) | |
| Defendants. ) | |

<u>**VERIFIED COMPLAINT**</u>

Plaintiff, AUXO BRANDS, INC. ("Plaintiff"), an Illinois corporation, by and through its attorneys, HINSHAW & CULBERTSON LLP, and complains of Defendants R-CLASS US LLC, LIESL DANCEWEAR LLC, LIESL DANCEWEAR INCORPORATED and R-CLASS LTD., a Russian corporation (collectively, "Defendants"), states as follows:

**NATURE OF ACTION**

1.     This is an action for violation of the Lanham Act, 15 U.S.C. §1114 and 1125(a), and the Illinois Deceptive Trade Practices Act 815 ILCS §510, *et. seq.*, and tortious interference with business relations, tortious interference with business expectancy, tortious interference with contract, and civil conspiracy arising from conduct engaged in by the Defendants to harm the Plaintiff.

2.     By this action, the Plaintiff seeks statutory damages, compensatory damages, punitive damages, attorney's fees and costs, injunctive relief, and all other relief to which they may be entitled and as deemed appropriate by this Court and a jury.

## PARTIES

3.     AUXO BRANDS, INC. ("Auxo") is an Illinois corporation f/k/a RP Group International, Inc.  Auxo's principal place of business is in Chicago, Illinois.

4.     R-CLASS US LLC ("R-Class US") is a limited liability company formed in the state of Virginia (entity 11487145 in Virginia Secretary of State's database).  Upon information and belief, R-Class US's principal place of business is in Manassas, Virginia.  The registered agent for R-Class US is Natalya Balatsenko.  R-Class US also has a registered fictitious name of "R-Class.US" (entity 11487088 in Virginia Secretary of State's database).

5.     LIESL DANCEWEAR, LLC ("LIESL LLC") is a limited liability company formed in the state of Virginia.   In 2015, Natalya Balatsenko was the registered agent and member/manager of Liesl Dancewear, LLC.

6.     LIESL DANCEWEAR INCORPORATED ("LIESL INC") is a Virginia corporation.   Natalya Balatsenko is the registered agent and Director.  Liesl Inc and Liesl LLC are collectively referred to herein as the "Liesl Entities."

7.     NATALYA BALATSENKO ("NATALYA") is an individual who resides in Manassas, Virginia.

8.     R-CLASS LTD. is a Russian corporation with its principal place of business in Moscow ("R-Class Russia").  The United States office of R-Class Ltd. is the R-Class US office.

9.     R-Class US and the Liesl Entities are affiliated with R-Class Russia, a Russian corporation.  The R-Class US website identifies R-Class US as the United States regional office of R-Class Russia.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of the Plaintiff's federal statutory claims pursuant to 28 U.S.C. § 1391.  This Court has supplemental jurisdiction over the subject matter of the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11.     This Court may exercise personal jurisdiction over the Defendants because they each do business with Illinois customers.  LIESL LLC had a contract with Plaintiff, an Illinois corporation, pursuant to which Liesl LLC agreed to the jurisdiction of courts in Cook County, Illinois. Liesl Inc attempted to purchase product pursuant to the terms of the Liesl LLC Agreement, which agrees to jurisdiction in Cook County, Illinois, and Liesl Inc is the successor and alter ego to Liesl LLC.  R-Class Russia's agreement with Plaintiff incorporates the Supply Agreement with Balero Trading, pursuant to which Balero and R-Class Russia agree to ship product to Plaintiff in Chicago, Illinois.  R-Class Russia's agreement with Plaintiff also provides that R-Class agrees to provide product "in strict compliance" with the Laws relating to obligations of the parties to the agreement as well as distribution o the Products in the Territory.

12.     R-Class Russia and R-Class US conduct business within the state and all Defendants have committed a tort within the state, which arises from their activity within the state. R-Class US sells product to Illinois retailers including in the Chicago area.

13.     Venue in this district is proper pursuant to 28 U.S.C. §1391 because, a substantial part of the events or omission giving rise to the claims occurred in this district.

14.     The Plaintiff has been injured by the Defendants' conduct and has suffered damages resulting therefrom.

## FACTUAL BACKGROUND

15. On July 24, 2015, Liesl Dancewear LLC ("LIESL LLC") was formed as a limited liability company in Virginia. The principal office of R-Class US is listed as 10739 River Run Drive, Manassas, Virginia. Natalya Balatsenko was the registered agent, and manager of the entity.

16. On January 19, 2023, R-CLASS US was organized with the Virginia Secretary of State's office. The principal office of R-CLASS US is listed as 10739 River Run Drive, Manassas, Virginia and Natalya Balatsenko is listed as the registered agent and member/manager.

17. R-Class US is an affiliate or regional office of R-CLASS RUSSIA.

18. On July 21, 2023, LIESL INC was formed in Virginia. The principal office of Liesl Inc is listed as 10739 River Run Drive, Manassas, Virginia and Natalya Balatsenko is listed as the registered agent and director.

19. On July 21, 2023, on the same day that Liesl Inc was formed, LIESL LLC was canceled and Articles of Cancellation were filed with the Virginia Secretary of State by Natalya Balatsenko.

20. Plaintiff is in the business of selling ballet shoes, specifically pointe shoes, as well as apparel, footwear and accessories for dancers.

21. Plaintiff's brand, Russian Pointe, is a brand known worldwide since May 1998. It has a signature color purple for all of its branding and it utilizes a naming system for pointe shoes, e.g., Rubin, Limina, Brava.

22. Plaintiff also developed names of its collections: Spotlight Collection, Jewels Collection, Classic Collection, and Polette Collection. The Jewels Collection included a diamond or jewel along with the product name. A copy of an example of the Jewels Collection is attached

as **Exhibit A**. The Russian Pointe Jewels collection included Rubin, Radiance, Almaz and Sapfir (Russian words for jewels).

23.     Plaintiff spent significant resources developing its branding and customer recognition in the market. Plaintiff's brands are high-class, luxury products.

24.     Plaintiff expended time and resources to develop its advertising, marketing, merchandise, apparel, trademarks and logos for use in its business.

25.     Plaintiff sells product to dance stores and required certain brand standards and rules to ensure that Russian Pointe continued to be perceived as a luxury brand in the dance shoe and apparel industry.

26.     The dance stores which sell Plaintiff's products enter into Distribution Agreements with Plaintiff, pursuant to which the distributors agree that:

> a.   it 'shall not commit or suffer any act that could compromise the Intellectual Property or Supplier's interests therein."
>
> b.   it shall "at all times conduct its business in a first-class manner and which will reflect favorably on Supplier and the Products and will not engage in any deceptive, misleading, illegal or unethical business practice."

A copy of the Liesl Distribution Agreement is attached as **Exhibit B**.

**Plaintiff's Relationship with R-Class Russia**

27.     Since May 1998, R-Class Russia manufactured ballet shoes for Plaintiff (known as Russian Pointe). The most recent iteration of the agreement between Plaintiff and R-Class Russia was a letter agreement dated February 25, 2016, pursuant to which R-Class Russia agreed to manufacture and deliver product to Plaintiff ("R-Class Russia Agreement").

28.     Pursuant to the terms of the R-Class Russia Agreement, Plaintiff had exclusive rights in North and South America to sell its ballet pointe shoes manufactured by R-Class Russia under a private label of "Russian Pointe."

29.     In February 2016, without authorization from Plaintiff, R-Class Russia used "Russian Pointe" on its business cards (see photo below referred to as **Exhibit C**).

**Exhibit C:**



30.     Plaintiff immediately demanded that R-Class Russia cease the use of its name and any attempt to publish an affiliation with Russian Pointe.

31.     In 2021, R-Class Russia began to refuse to ship product pursuant to the parties' agreement. In 2021, 2022 and 2023, R-Class Russia accepted purchase orders but then refused to ship complete orders that it had already accepted.  Since 2021, R-Class Russia has failed to ship approximately 14,000 pairs of shoes for orders it had accepted.

32.     In 2023, R-Class Russia requested that Plaintiff only place orders of 1000 per month so that R-Class Russia could keep up with production (as compared to Plaintiff's prior orders of 100,000 pairs annually). Unbeknownst to Plaintiff, R-Class Russia's stated reason was untrue.  In fact, R-Class Russia had begun its infiltration of the United States market, unfairly competing and utilizing R-Class US and the Liesl Entities to deceive customers.

33.     In fact, R-Class Russia promised they would send orders, and that they would increase production to catch up with backorders.

34.     R-Class Russia's refusal to ship has caused thousands of backorders for Plaintiff's customers.

35.     R-Class Russia's refusal to ship product is part of its strategy to unfairly compete in the United States market, using its American affiliates to cause confusion in the market to as an affiliation with Russian Pointe products, while also causing a delay in Plaintiff's ability to meet customer demand.

36.     Upon information and belief, R-Class Russia conspired with Natalya Balatsenko to form an American entity (R-Class US) and a new Liesl entity, Liesl Inc., to perpetuate a fraud upon Plaintiff.  (*See* paragraphs 41-45 below).

37.     Because of R-Class Russia's refusal to ship and other conduct as described herein, Plaintiff is damaged by backorders for its clients and an inability to meet the customer demand.

38.     R-Class Russia (including through its affiliates R-Class US and the Liesl Entities) have represented publicly that they have "50,000 pairs of pointe shoes in stock."

39.     In December 2023, Plaintiff discovered that Defendants represented to Plaintiff's customers, including Illinois customers and retailers, that Plaintiff no longer manufactures in Russia and cannot obtain their own Rubin shoe (a very popular shoe among dancers).  Defendants represented that the retailers and customers should buy from Defendants because they can obtain the "Rubin" shoe and Russian Pointe cannot supply it.

40.     In March 2023, R-Class US began advertising in the United States.  On April 16, 2023, R-Class US sent an email to retailers and customers in the United States which provided that "Last month R-Class officially announced entering the US market."

**Plaintiff's Relationship with Liesl Dancewear and Their Covert Legal Entity Switch**

41.     On or about November 20, 2021, LIESL LLC executed a Distributor Agreement with Plaintiff.  *See* **Exhibit B**.

42.     On July 21, 2023, Natalya Balatsenko on behalf of Liesl LLC filed articles to cancel its entity with the Virginia Secretary of State.

43.     On July 21, 2023, Liesl Inc filed articles of incorporation with the Virginia Secretary of State.   The Liesl Entities operate in from the same location and were both formed/cancelled by Natalya Balatsenko. Upon information and belief, the address listed for the Liesl Entities is Natalya Balatsenko's residence.

44.     On September 18, 2023, Plaintiff notified Liesl LLC[1] that they were in breach of the Distributor Agreement and to remove all of Plaintiff's Intellectual Property from their store and website immediately.

45.     Unbeknownst to Plaintiff, Liesl had already performed an entity switch, cancelling the LIESL LLC and forming the LIESL INC.  Accordingly, as of July 21, 2023, LIESL INC had no authority to sell Plaintiff's products or use Plaintiff's Intellectual Property.

**Liesl Places a Fraudulent Order at the Same Time that R-Class Russia Refuses to Fill Orders**

46.     In August 2023, LIESL INC (disguised as LIESL LLC) placed an order with Plaintiff.  Plaintiff was unaware that the LIESL LLC had been cancelled.  Plaintiff would not have filled the order placed by Liesl Inc had it known that the entity was not the entity under contract with Plaintiff and subject to the provisions in the Distributor Agreement.

47.     The Liesl Entities perpetuated a fraud upon Plaintiff, with a similar legal entity name and placing an order under a new entity without notifying Plaintiff.

---

[1] Plaintiff was not made aware by Liesl LLC that it had cancelled and reformed as Liesl Inc.

48. The provisions of the Distributor Agreement prohibit the assignment of the Agreement by the distributor and Liesl Inc had no right to utilize any of Plaintiff's trademarks or sell its product since it had no agreement with Plaintiff.

**The Defendants Conspire to Unfairly Compete in the United States**

49. R-Class Russia and R-Class US's website (www.r-class.us) and its email campaign to Illinois and US customers and retailers contains numerous references to Plaintiff's brands, products that are similarly named, similar purple colors, utilizes jewels as part of certain collections. A sample from the R-CLASS US email campaign to Illinois customers is attached as **Exhibit D**.

50. The R-CLASS US's website was registered by Natalya Balatsenko. A copy of the Domain Registration is attached as **Exhibit E**.

**Registration and Use of the Trademarks and Trade Dress of Plaintiff's Brands**

51. The logo used by Russian Pointe was designed using a specific RP combination and the color purple ("Russian Pointe Logo"):



52. This color purple is used in the marketing and branding of Russian Pointe products, and has been for more than 15 years.

53. In 2007, the phrase "Russian Pointe" was registered with the U.S. Patent and Trade Office as reflected in registration number 3209971 ("Russian Pointe Mark").

54.     In 2018, the Russian Pointe Muse Logo was registered with the U.S. Patent and Trade Office as reflected in registration number 5463779 ("RP Muse").  The Russian Pointe Muse Logo is pasted below, which also demonstrates the mark and the use of the color purple:



55.     In 2012, the Russian Pointe Rubin was registered with the U.S. Patent and Trade Office as reflected in registration number 4216549 ("RP Rubin").   (Rubin means ruby in Russian).

56.     In 2015, the Russian Pointe Encore Logo was registered with the U.S. Patent and Trade Office as reflected in registration number 4750252 ("RP Encore").

57.     Many of Plaintiff's trademarks are also registered internationally.  The Russian Pointe Logo, the Russian Pointe Mark, RP Muse, RP Rubin and Plaintiff's trademarks are collectively referred to herein as "RP Marks."

58.     Below are numerous examples of the conduct by Defendants which infringes on Plaintiff's rights, and causes consumer confusion in the market:

       a.   Plaintiff launched a campaign in 2006 for its "Jewels Collection", and utilized a diamond as part of the marketing.  An example of the advertisement is pasted below as **Exhibit F**.



i.  In 2018, R-Class Russia copied the image and theme of the Jewels Collection and utilized a replica in its advertising. A copy of the R-Class Russia replica is pasted below as **Exhibit F-1**.





b. Plaintiff's shoes in its Jewels Collection are pasted below in **Exhibit G**.



i. R-Class Russia used very similar naming systems so that it could affiliate its products with Plaintiff's products. For example, Plaintiff's Rubin shoe was named by R-Class Russia as "JW-R," in an attempt to associate R-Class's product with the Plaintiff's Rubin shoe (i.e., JW = jewels collection and R = Rubin). A copy of the naming system used by R-Class Russia is attached below as **Exhibit G-1**.



ii. R-Class Russia attempts to mirror the Plaintiff's Jewels Collection.

c. One of Plaintiff's products is the RP Sewing Kit, which includes the Plaintiff's signature purple color. A photo of the Plaintiff's sewing kit is attached as **Exhibit H**.





i. In an attempt to affiliate Defendants' products with Plaintiff's products, in 2023, Defendants R-Class US and the Liesl Entities caused the Plaintiff's sewing kit to be displayed in its social media ("Defendants' Ad"). A copy of the Defendants' Ad is attached below as **Exhibit H-1**.



The Tik Tok handle utilizing Defendants' Ad is "rclass.america."

d. Plaintiff's Jewels Collection includes the Rubin and Brava.

    i. In an attempt to affiliate Defendants' products with Plaintiff's products, Defendants utilized social media strategy which includes Plaintiff's products and product names. Copies of Defendants' 2023 social media are attached below as **Exhibit I-1**.









Defendants reference "RP Brava" and the "Rubin," which are Plaintiff's products.

e.  Plaintiff named its collection "RP Collection."





i.  Defendants utilized a confusingly similar name, RC Collection, and utilized a jewel image to further cause confusion. An example of the Defendants' RC Collection image is attached below as **Exhibit J-1**.

16



f. In 2019, R-Class Russia improperly and without authorization put an R-Class Russia label inside a Russian Pointe shoe and with a counterfeit label. A photo of the Russian Pointe shoe with a R-Class Russia logo is attached below as **Exhibit K-1**.



g. For 25 years, Russian Pointe has utilized purple as its signature color on its products and marketing. Examples of Plaintiff's utilization of purple on its products and marketing are attached below as **Exhibit L**.







The color purple is associated with Russian Pointe in the dance shoe and apparel industry.

      i. Defendants use purple on their marketing in order to create confusion and/or affiliation with Russian Pointe. Examples of Defendants' use of purple are attached below as **Exhibit L-1**.





h. The Russian Pointe brands include Brava, Rubin, etc.



19



i. Defendants' marketing includes direct reference to "Russian pointe shoes" and direct product comparisons. See examples attached below as **Exhibit M-1**.







i.   Russian Pointe created the Jewels Collection.

    i.   R-Class claims in its social media that it created the Jewels Collection.

    See social media post attached as **Exhibit N-1**.



j. Social media posts which "tag" Russian Pointe in Defendants' product advertisements. See posts attached as **Exhibit O-1**, utilizing a #russianpointe hashtag.

59. The Russian Pointe branding is utilized in all branding, marketing, social media and at all of Plaintiff's events in the dance industry.

60. The RP Marks and trade dress are utilized by Plaintiff on merchandise including pointe shoes, boxes, dance apparel, as well as social media marketing, speeches, and other advertisement.

**R-Class US/R-Class Russia/Liesl's Deceptive Trade Practices**

61. As described in paragraph 40-60 above which is incorporated herein by reference, and among other things, R-Class Russia, R-Class US and the Liesl Entities utilize the following which infringes on the rights of Plaintiff (collectively, the "Infringing Conduct"):

a. Attempts to sell and selling counterfeit products with unauthorized R-Class labels on Russian Pointe products;

b. Similar styles designed to mirror Russian Pointe products (e.g., The Spotlight Collection similar to Plaintiff's Jewel Collection);

c. Similar names (e.g., JW-R shoe name similar to Plaintiff's "Rubin");

d. Utilization of similar colors and packaging, and branding (e.g., R-Class trade show booth using Plaintiff's color purple, use of RP product in the Defendants' Ad, and tagging Plaintiff in ads to confuse customers); and

e. Using Plaintiff's trademarks and trade dress in Defendants' creation of products, product names, marketing and advertising.

62. R-Class Russia, R-Class US and the Liesl Entities conspired to obtain hundreds of pointe shoe boxes that contained Plaintiff's trademarks and trade dress. In 2016, Liesl requested Plaintiff ship empty boxes claiming that they wanted fresh boxes for Plaintiff's products. Upon information and belief, based on the patterns that have emerged since 2016, it is possible that R-Class Russia and Liesl LLC conspired to sell product in Plaintiff-branded boxes that was not Plaintiff's actual product.

63. Upon information and belief, R-Class Russia, R-Class US and Liesl conspired to import products from Russia utilizing Plaintiff's boxes (but fill the boxes with other product).

64. In 2023, R-Class Russia, R-Class US and the Liesl Entities went to Plaintiff's retailers and distributors to sell R-Class Russia, R-Class US and Liesl product, without disclosing that R-Class was not a part of Russian Pointe, and/or to represent to the customers/market that R-Class US products were Russian Pointe or the same as Russian Pointe.

65. R-Class published inappropriate images alongside collection and product names that are similar to Plaintiff's; in a market that targets children. Such extremely inappropriate imagery coupled with the confusion in the market can dilute Plaintiff's intellectual property and goodwill, especially in a market that is heavily dominated by children and young girls.

66.     R-Class Russia, R-Class US and Liesl caused consumer confusion in the market with their deceptive trade practices, misleading and confusing advertising and marketing, and similar branding, similar colors, naming systems and locations.

67.     Defendants also caused its marketing to "tag" Russian Pointe with hashtags of #russianpointe on its social media. An example is pasted below as **Exhibit O-1**:



68.     The Infringing Conduct and R-Class US and the Liesl Entities' products and marketing are confusingly similar to RP's Marks, branding, logo and merchandise.  The Infringing Conduct utilizes the same color scheme, naming system, colors, branding, and even deliberately utilized Plaintiff's packing to mislead the consumer.

69.     Defendants utilize the Infringing Conduct on exactly the same type of merchandise and materials, namely ballet shoes and dance apparel and associated products.

70.     Defendants utilizes the Infringing Conduct on all of its social media and advertising, as well as in the similar events.

71. The Infringing Domain (www.r-class.us) and social media, Facebook account include virtually an exact replica of the merchandise, marketing strategies, partners, advertising and website design, photography style and content.

72. The Infringing Trade Dress is utilized in the same industry in North America and has caused confusion.

73. Defendants' use of its Infringing Trade Dress began as soon as soon as Liesl secretly switched legal entities, and simultaneous with the timing of R-Class Russia's deliberate refusal to timely ship product as ordered by Plaintiff (and accepted by R-Class Russia).

74. These acts were coordinated and deliberate by Russian-owned R-class Russia, R-Class US (its American affiliate and regional office) and the Liesl Entities, in an attempt to enter the United States market with unfair and deceptive trade practices.

75. These acts were undertaken willfully and wantonly.

76. Defendants deceptive acts are designed to unfairly compete and utilize the goodwill and brand developed by the Plaintiff over the span of more than 25 years.

77. Defendant's acts are willful and wanton and rise to the level of conduct for which punitive damages are recoverable by Plaintiff.

78. As a result of the widespread use and display of the Plaintiff's Trademarks and Trade Dress, the trade dress has acquired secondary meaning to potential customers, clients, distributors, partners, vendors and supporters for the Plaintiff, in that potential customers, clients, distributors, partners, vendors and supporters have come to associate the Plaintiff's Trade Dress, and overall design of the Plaintiff's Trade Dress with the Plaintiff.

**CLAIMS FOR RELIEF**

**Count I - Federal Trademark Infringement**
**(15 U.S.C. § 1114, et. seq.)**

79.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 78 of the Complaint as though fully set forth herein.

80.     This is a claim for trademark infringement under 15 U.S.C. §1114.

81.     The RP Marks are valid and legally protectable marks.

82.     Plaintiff has an exclusive license to use and sell products with the RP Marks, and has a right to seek protection and injunctive relief to protect the RP Marks and stop unlawful infringement of the RP Marks.

83.     Subsequent to Plaintiff's use and registration of the RP Marks and adoption of the Plaintiff's Trade Dress, Defendants developed, advertised, and solicited customers using the Infringing Conduct, Infringing Trade Dress, a Facebook page, social media, merchandise, marketing strategies, and advertising techniques that are confusingly similar to the Plaintiff's Trade Dress and RP Marks.  Defendants' misuse of RP Marks and unauthorized marks and trade dress similar to Plaintiff's may dilute its value.

84.     For example, the conduct described in paragraphs 40-71 herein, the Infringing Domain, Infringing Logo, a Facebook page, merchandise, marketing strategies, and advertising techniques have the overall design of the Plaintiff's Trade Dress, and include unauthorized use of Plaintiff's Trademarks.

85.     Defendant's use of the colors, naming systems, false advertising and confusing branding in connection with the Infringing Domain, Infringing Logo, Facebook page, merchandise, marketing strategies and advertising techniques are likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff.

86. Upon information and belief, Defendant's acts of trademark infringement were undertaken willfully with full knowledge of the falsity of such designation of origin, sponsorship, or approval of Defendants' products and false descriptions or representations, and with the express intent to cause confusion, and to mislead and deceive the public. Defendants have acted in bad faith.

87. Plaintiff is informed and believes, and thereon alleges, that Defendants have derived and received, and will continue to derive and receive, gains, profits and advantages from Defendants' trademark infringement in an amount that is not presently known to Plaintiff. By reason of Defendants' actions, constituting trademark infringement, Plaintiff has been damaged and is entitled to monetary relief in an amount to be determined at trial.

88. Due to Defendants' actions, constituting trademark infringement, Plaintiff has suffered and continues to suffer great and irreparable injury, for which Plaintiff has no adequate remedy at law.

WHEREFORE, based on the Defendants' violation of the Lanham Act, particularly 15 U.S.C. § 1114, the Plaintiff seeks:

A. Injunctive relief enjoining Defendant from engaging in conduct which infringes on the RP's Marks and intellectual property rights, including, but not limited to, the entry of an order which enjoins the Defendants from using its domain, logos, use of the color purple, and statements which cause confusion relating to the origin or affiliation of Russian Pointe with R-Class product;

B. Actual and compensatory damages resulting from Defendants' actions;

C. An award of three times its actual damages;

D. An award of its attorney's fees and costs reasonably incurred; and,

E.  An award of any such other and further relief as this Court may deem just and proper or to which it may be entitled as a matter of law or equity.

### Count II - Federal Trade Dress Infringement
### (15 U.S.C. § 1125(a))

89.  Plaintiff repeats and realleges the allegations of Paragraphs 1 through 88 of the Complaint as though fully set forth herein.

90.  This is a claim for trade dress infringement under 15 U.S.C. § 1125(a).

91.  Plaintiff has a distinctive trade dress in the use of the Plaintiff's Website, Logo, registered marks, Social Media Marketing, merchandise, naming systems, collection branding, business model and other merchandise, marketing strategies, partners, advertising, website design and content ("Plaintiff's Trade Dress").

92.  As a result of the widespread use and display of the Plaintiff's Trade Dress, the trade dress has acquired secondary meaning to potential customers, clients, distributors, partners, vendors and supporters for the Plaintiff, in that potential customers, clients, distributors, partners, vendors and supporters have come to associate the Plaintiff's Trade Dress, and overall design of the Plaintiff's Trade Dress with the Plaintiff.

93.  Subsequent to Plaintiff's use and adoption of the Plaintiff's Trade Dress, Defendants developed, advertised, and solicited customers using the Infringing Domain, Infringing Trade Dress, a Facebook page, merchandise, marketing strategies, and advertising techniques that are confusingly similar to the Plaintiff's Trade Dress.

94.  For example, the Infringing Domain, Infringing Logo, a Facebook page, merchandise, marketing strategies, and advertising techniques have the overall design of the Plaintiff's Trade Dress.

95. Defendant's use of the colors, naming systems, false advertising and confusing branding in connection with the Infringing Domain, Infringing Logo, Facebook page, merchandise, marketing strategies and advertising techniques are likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff.

96. Upon information and belief, Defendant's acts of trade dress infringement were undertaken willfully with full knowledge of the falsity of such designation of origin and false descriptions or representations, and with the express intent to cause confusion, and to mislead and deceive the public.

97. Plaintiff is informed and believes, and thereon alleges, that Defendants have derived and received, and will continue to derive and receive, gains, profits and advantages from Defendants' trade dress infringement in an amount that is not presently known to Plaintiff. By reason of Defendants' actions, constituting trade dress infringement, Plaintiff has been damaged and is entitled to monetary relief in an amount to be determined at trial.

98. Due to Defendants' actions, constituting trade dress infringement, Plaintiff has suffered and continues to suffer great and irreparable injury, for which Plaintiff has no adequate remedy at law.

WHEREFORE, based on the Defendants' violation of the Lanham Act, particularly 15 U.S.C. § 1125(a), the Plaintiff seeks:

F. Injunctive relief enjoining Defendant from engaging in conduct which infringes on the Plaintiff's Trade Dress, including, but not limited to, the entry of an order which enjoins the Defendants from using their domain, social media, ads which reference Russian Pointe, using any of Plaintiff's Trademarks or trade dress;

G.   Actual and compensatory damages resulting from Defendant's actions;

H.   An award of three times its actual damages;

I.   An award of its attorney's fees and costs reasonably incurred; and,

J.   An award of any such other and further relief as this Court may deem just and proper or to which it may be entitled as a matter of law or equity.

## Count III – Illinois Deceptive Trade Practices Act
## (815 ILCS §510, et. seq.)

99.   Plaintiff repeats and realleges the allegations of Paragraphs 1 through 98 of the Complaint as though fully set forth herein.

100.   By use of the deceptive trade practices alleged in paragraphs 40-75 above, the Defendants intended to deceive customers, retailers, and the public in general as to the affiliation, connection or association between Defendants and Plaintiff.

101.   By use of the Infringing Domain, Infringing Logo and infringement of the Plaintiff's Trade Dress, Defendant intended to utilize the goodwill of the Plaintiff to solicit sell Defendants' product.

102.   By use of the Infringing Domain, its social media, unauthorized use of Plaintiff's Trademarks and trade dress and infringement of the Plaintiff's Trade Dress, Defendants intended to cause confusion with customers, retailers, distributors and the market.

103.   Upon information and belief, Defendants received gains, profits and other benefits as a result of its deceptive acts.

104.   By engaging in the foregoing conduct, Defendants have engaged in a deceptive trade practice.

105.   Defendants willfully engaged in the foregoing conduct.

106.   Defendants willfully engaged in a deceptive trade practice.

107.    Based on Defendants' refusal to take down the Infringing Domain and social media, there is a recognizable threat of future conduct that would deceive the general public with respect to the affiliations, connection or association, or lack thereof, between Plaintiff and Defendants.

108.    By engaging in the conduct described in the complaint, the Defendants violated the Illinois Uniform Deceptive Trade Practices Act.

109.    As a direct and proximate result of the Defendants' conduct described in this complaint and violation of the Illinois Uniform Deceptive Trade Practices Act, the Plaintiff has suffered injuries and damages resulting therefrom that include, but are not limited to, violation of its statutory rights, loss of goodwill, and monetary damages.

WHEREFORE, based on the Defendant's violation of the Illinois Uniform Deceptive Trade Practices Act, the Plaintiff seeks:

A.  An award of its compensatory damages, attorney's fees and costs reasonably incurred;

B.  Injunctive relief in the form of order permanently (i) enjoining the Defendant from engaging in marketing strategies and other conduct which infringes on the Plaintiff's Trade Dress (ii) enjoining Defendants from using the Infringing Domain and (ii) enjoining the Defendants from using the Infringing Logo; and,

C.  An award of any such other and further relief as this Court may deem just and proper or to which it may be entitled as a matter of law or equity.

### Count IV – Tortious Interference with Business Relationships
### (vs all Defendants)

110.    Plaintiff hereby incorporates by reference Paragraphs 1 through 109 and above as though fully set forth herein.

111.    Plaintiff held a reasonable expectancy of entering into and continuing valid business relationships with retailers who desire to sell Russian Pointe products, and some who have executed Distributor Agreements.

112.    Defendants knew of the Plaintiff's expectancy of entering into and continuing valid business relationships with retailers.

113.    Defendants created its business model, events, the Infringing Domain and social media and infringed on the Plaintiff's Trade Dress with the reasonable expectation that customers and potential customers of Plaintiff would purchase R-Class product rather than Russian Pointe. The Defendants conspired to create a scenario wherein Plaintiff could not meet its customer demands, while Defendants simultaneously entered the market using deceptive trade practices.

114.    Defendants utilized the Infringing Domain, unauthorized use of Plaintiff's marks, merchandise, marketing strategies, and advertising techniques which infringed on the Plaintiff's Trade Dress with the reasonable expectation that potential customers, customers, retailers and distributors of Plaintiff would be confused and purchase from Defendants instead.

115.    Defendants acted with the intent to tortuously interfere with the Plaintiff's prospective business relations by engaging in the foregoing conduct described in this count.

116.    The purchase and creation of the Infringing Domain, the creation of the social media strategy, the naming systems, confusing labeling and packaging, and the conduct which infringes on the Plaintiff's Trade Dress also constitutes an intentional and unjustifiable interference with the Plaintiff's prospective donors and supporters.

117.    Defendant's purposeful and intentional interference with the Plaintiff's prospective retailers and prospective business relations prevented the Plaintiff's legitimate expectancies from developing into valid business relationships.

118.     As a result of the Defendant's tortious interference with Plaintiff's prospective business relations, the Plaintiff has suffered damages including, but not limited to, loss of prospective revenue from customers, relationships with distributors that otherwise would have purchased from and worked with Plaintiff.

WHEREFORE, based on the Defendants' tortious interference with prospective business relations, the Plaintiff seeks recovery of compensatory and punitive damages  and any such other and further relief as this Court may deem just and proper or to which it may be entitled as a matter of law or equity.

### Count V – Breach of Contract
### (vs the Liesl Entities)

119.     Plaintiff hereby incorporates by reference Paragraphs 1 through 115 and above as though fully set forth herein.

120.     Plaintiff and Liesl LLC entered into the Distributor Agreement.

121.     Defendant Liesl LLC breached the Distributor Agreement by, among other things, causing the improper use of Plaintiff's Trademarks and Trade Dress by Defendants.

122.     The Distributor Agreement also precludes Liesl LLC from working directly with Plaintiff's suppliers, which is likely why Liesl LLC abruptly cancelled its entity and formed a new entity the same day with a similar name (Liesl Inc). R-Class US and Liesl Inc is a mere continuation and/or an alter ego of Liesl LLC.

123.     Defendant's purposeful and intentional breach of its agreement with the Plaintiff caused damage to Plaintiff, which has impaired Plaintiff's global market position in the industry.

124.     Plaintiff performed pursuant to the terms of the Distribution Agreement.

125.     As a result of the Defendant's breach, the Plaintiff has suffered damages including, but not limited to, loss of prospective revenue from customers, relationships with distributors that otherwise would have purchased from and worked with Plaintiff.

WHEREFORE, based on the Defendants' breach of the Distribution agreement, the Plaintiff seeks recovery of compensatory damages, and costs and attorneys' fees,  and any such other and further relief as this Court may deem just and proper or to which it may be entitled as a matter of law or equity.

### Count VI – Civil Conspiracy
### (vs the all Defendants)

126.     Plaintiff hereby incorporates by reference Paragraphs 1 through 125 and above as though fully set forth herein.

127.     All Defendants were aware of the agreement between R-Class Russia and Plaintiff. All Defendants were aware of the Distributor Agreement between Plaintiff and Liesl LLC.

128.     Defendant Liesl LLC breached the Distributor Agreement by, among other things, causing the improper use of Plaintiff's Trademarks and Trade Dress by Defendants.

129.     The Distributor Agreement also precludes Liesl LLC from working directly with Plaintiff's suppliers, which is likely why Liesl LLC abruptly cancelled its entity and formed a new entity the same day with a similar name (Liesl Inc). R-Class US and Liesl Inc is a mere continuation and/or an alter ego of Liesl LLC.

130.     Defendant's purposeful and intentional breach of its agreement with the Plaintiff caused damage to Plaintiff, which has impaired Plaintiff's global market position in the industry.

131.     Plaintiff performed pursuant to the terms of the Distribution Agreement and the Supply Agreement with R-Class.

132.     The Defendants conspired to cause R-Class Russia to breach its agreement with Plaintiff, to cause Liesl LLC to breach its Distributor Agreement with Plaintiff and to cause Liesl Inc to perpetrate a fraud upon Plaintiff by ordering product from Plaintiff under Liesl LLC's account.

133.     The Defendants conspired to bring Russian products to the United States market using fraudulent and deceptive business practices, and to unfairly compete.

134.     Each of the Defendants participated in unlawful acts or lawful acts in an unlawful manner.

135.     The acts by Defendants were in furtherance of the common scheme by Defendants.

136.     Plaintiff, and Illinois retailers and consumers, have been damaged as a result of the actions taken by Defendants in furtherance of the scheme.

WHEREFORE, the Plaintiff seeks recovery of compensatory damages and any other damages available, injunctive relief, and costs and attorneys' fees, and any such other and further relief as this Court may deem just and proper or to which it may be entitled as a matter of law or equity.

## JURY DEMAND

Plaintiff hereby demands a jury on all counts of the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff AUXO BRANDS, INC. respectfully prays for a judgment against R-CLASS US, LLC, LIESL DANCEWEAR LLC AND LIESL DANCEWEAR INCORPORATION and R CLASS LTD as follows:

1.      That PLAINTIFF be awarded injunctive relief enjoining Defendants from continued infringement, breach of contract, tortious interference and the like.

2.      That PLAINTIFF be awarded compensatory damages plus attorneys' fees and costs; and

3.      That PLAINTIFF be awarded any such other and further relief as this Court may deem just and proper or to which it may be entitled as a matter of law or equity.


Dated:  January 8, 2024                              Respectfully Submitted,

                                                     **AUXO BRANDS, INC.**

                                      By:   _____
                                                     Megan Lopp Mathias
                                                     One of Its Attorneys

Megan Lopp Mathias
**HINSHAW & CULBERTSON LLP**
151 North Franklin Street, Suite 2500
Chicago, Illinois  60606
P 312.704.3000 | F 312.704.3001
mmathias@hinshawlaw.com
Firm I.D. #90384

36

## VERIFICATION

I, Aleksandra Efimova, verify that I am a represented Plaintiff in this proceeding, and that the facts set forth in the Verified Complaint are true and correct to the best of my knowledge, information, and belief, except (1) where expressly stated to be based upon information and belief, in which case, I believe them to be true and (2) legal conclusions, for which I expressly defer to my legal counsel. I understand that knowingly false statements herein are subject to the penalties of 28 U.S.C. § 1746 relating to sworn declarations to authorities.

*Aleksandra Efimova*

Aleksandra Efimova,
as President of Auxo Brands, Inc.